IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TERESA COUNCELL**                                                                                              **PLAINTIFF**

**VERSUS**                                                         **CIVIL ACTION NO. 3:17cv56-CWR-RHW**

**NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY**                                                **DEFENDANT**

## REPORT AND RECOMMENDATION

Counsel for Plaintiff Teresa Councell filed this action January 26, 2017, seeking judicial review of the denial of Councell's claim for disability benefits under the Social Security Act.[1] On grounds that there exists an unresolved conflict between the *Dictionary of Occupational Titles* (DOT), Councell challenges the Administrative Law Judge's finding that jobs within her capabilities exist in significant numbers.

### Facts and Procedural History

At age 42,[2] Councell applied for disability benefits on September 6, 2013, alleging inability to work since July 3, 2013 due to disability resulting from back problems; arthritis throughout her body including her neck, ankles, knees, elbows and hands; pain; COPD; panic attacks; PTSD (from childhood physical, mental and sexual assaults); depression (bipolar with depressive tendencies); diabetes; blood pressure and migraine headaches. [9, p. 66, 220, 49-54] The application was denied initially in May 2014, and on reconsideration in June 2014. [9, pp. 75-84, 85-93] On August 19, 2015, Administrative Law Judge (ALJ) Clarence T. Guthrie, III conducted a hearing at which Councell and Vocational Expert (VE) Kathy Schmidt testified. [9, pp. 29-60] Councell testified she is single, she lives with her boyfriend and has an 18-year old

---

[1] Councell first had a non-attorney representative; she was represented by an attorney at the hearing. [9, pp. 100, 154-55, 33]

[2] Councell was born in December 1970. [9, pp. 37, 65-66]

son and 24-year old daughter. She has a GED and received an Associate's Degree in nursing in 2012. She has worked as an LPN since 1993. [9, pp. 37-8, 192, 40-42] She stated she gets long-term disability through her employer. *Id*. Except for a few hours in October 2013, she has not worked since July 3, 2013. [9, p. 39] Councell attributes her back problems to a 2002 car wreck for which she stated she self-medicated with Motrin and other NSAIDS. She continued to work until July 2013, and also earned her Associate's Degree during that time. She testified her pain worsened and she went to the Emergency Room where she learned she has osteoarthritis and compression fractures in her spine. [9, pp. 45-47]

Councell testified she has a fear of heights, cannot deal with dust, fumes, etc., cannot stand or sit for long periods, has migraine headaches at least once a month which are triggered by weather or hormonal cycles and last one to two days, and that she is in constant pain – never less than three on a ten-point scale even with medication. [9, pp. 40-44] She testified that pain and frustration lead her to spend her afternoons lying down crying. [9, p. 48] She stated she can walk a maximum of three to five minutes before she must stop, can comfortably lift a 20-ounce bottle of water, can open a car door although it sometimes requires both hands, and can sit 20-30 minutes before having to stand up and move around for up to 15 minutes. She is most comfortable lying on the floor, flat on her back with her legs on the couch. She begins her day at 3:00 a.m. when she takes her thyroid medication. Within the next hour or two, she begins taking pain medication. She can usually get dressed, then must lie down due to pain, and she requires more pain medication around 9:00 a.m. She stated she does what she can before pain makes her stop and lie down. She is usually out of bed a total of six hours in a day, lying on the floor, couch or bed the rest of the time. She complains of problems raising her arms, which makes washing and caring for her hair difficult. She has pain turning her head, especially to the right, and testified the only thing she knows to do to get better is continue the stretching and exercises

physical therapy gave her, that rheumatologist Dr. Ivory recommended non-impact exercises like swimming. Some nurse told her things would only get worse and she would be in a wheelchair in five years. [9, pp. 49-54]

Vocational Expert Kathy Schmidt testified Councell's work as an LPN is medium, skilled work with an SVP[3] of 6; her work as a staff nurse is medium, skilled work, SVP 7. Considering one of Councell's age, education, and work experience; who is able to perform sedentary work if able to change position from sit to stand to walk up to three minutes per hour; can occasionally push/pull and climb ramps and stairs but never ropes, ladders or scaffolds; occasionally stoop, balance, kneel, crouch and crawl; have occasional exposure to extreme cold, heat, weather or humidity and only occasional exposure to irritants (fumes, odors, dust, etc.), and can never be exposed to hazards such as large moving mechanical parts or unprotected heights, Schmidt opined that such person could not do Councell's past work, but could perform sedentary work as an office clerk, telephone clerk, or operator; and that all these jobs are unskilled work, SVP 2,[4] and are available in significant numbers. If one adds to the hypothetical a limitation to simple, routine, repetitive tasks, with no fast production rate pace, the ability to make simple work-related decisions and tolerate occasional changes in the work setting, and limitation to occasional interaction with the public and coworkers, Schmidt stated Councell could still perform the job of surveillance system monitor, which is sedentary, unskilled work with an SVP 2.[5] [9, pp. 56-58]

---

[3] Specific Vocational Preparation (SVP) level refers to amount of time required for a typical worker to learn how to do the job.

[4] An SVP of 2 is unskilled work, or work requiring "little or no judgment to do simple duties that can be learned on the job in a short period of time." See 20 C.F.R. §§ 404.1568(a), 416.968(a); SSR 00-4p, 2000 WL 1898704.

[5] The limitation to only occasional interaction with the public eliminated the other jobs, according to Schmidt.

On September 15, 2015, ALJ Guthrie issued a 13-page decision concluding Councell was not disabled under the Social Security Act from July 3, 2013 through the date of the decision. [9, pp. 16-28]  By order of December 5, 2016, the Appeals Council denied review [9, pp. 5-10], and Councell filed this action for judicial review of the decision.  Before the Court are [10] Councell's motion to reverse and [12] the Commissioner's motion to affirm the decision.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the decision.  *Villa*, 895 F.2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court; it is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence.  *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

Factual findings supported by substantial record evidence are conclusive and must be upheld.  *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64

F.3d 172, 173 (5th Cir. 1995). The Court may reverse the Commissioner's decision if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Commissioner's decision "is accorded great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

<u>Law and Analysis</u>

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). It was Councell's burden to prove disability which precluded her from engaging in substantial gainful work, *i.e.*, work involving significant physical or mental activities and usually done for pay or profit. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if she is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Guthrie applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At Step One, Judge Guthrie found that Councell had not engaged in substantial gainful activity

since her alleged onset of disability. At Step Two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, which meets the duration requirement and is severe, *i.e.*, significantly limits the ability to perform basic work activities. ALJ Guthrie found Councell has severe impairments of COPD (chronic obstructive pulmonary disease), osteoarthrosis and allied disorders, migraine, dysfunction of major joints (neck, shoulders, right arm), obesity, affective disorder (depression) and anxiety disorder. Judge Guthrie found Councell's diabetes and hypertension non-severe as those conditions are well-controlled with medications, and fibromyalgia did not meet the disability durational requirement as it was only diagnosed two months before the hearing. [9, pp. 18-19]

Step Three requires the ALJ to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment/combination of impairments is of such severity and meets the duration requirement, the claimant is disabled, otherwise the analysis continues to Step Four. Upon review and consideration of the Listing of Impairments in conjunction with the entire record, ALJ Guthrie found none of the medical impairments identified in the Listing applies. He specifically held "the medical evidence does not establish the presence of medical findings that would meet or equal" listed impairments for chronic pulmonary insufficiency (Listing 3.02), major dysfunction of a joint (Listing 1.02) or spinal disorders (Listing 1.04). [9, pp. 18-19] Judge Guthrie also found Councell's mental impairments neither singly nor in combination meet or medically equal Listings 12.04 (bipolar and related disorders) and 12.06 (anxiety-related disorders), due to the lack of evidence of any marked limitations or restrictions. The ALJ found, based on the overall evidence, that Councell has (1) mild restriction in daily living activities, (2) moderate difficulties in social functioning, (3) moderate difficulties in maintaining concentration, persistence or pace, and (4) no episodes

of decompensation; and she had neither any residual mental disease process which might make her unable to function, nor a "history of one or more years' inability to function outside a highly supportive living arrangement."[6]  [9, p. 19]

      While the ALJ found Councell's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he found her statements not entirely credible as to the intensity, persistence and limiting effects of the symptoms stating, "The medical evidence of record simply does not support the magnitude of symptoms as testified to at the hearing."  [9, p. 22]  Record examples of inconsistencies in Councell's testimony or conflicts between her statements and other record evidence include her testimony that she was told she would be in a wheelchair within five years which is found nowhere in the medical records and which, upon questioning, Councell admitted no doctor had told her; she testified her back injuries came from a 2002 car wreck, yet she was able to continue working for another 11 years, and to earn her Associate's Degree during that time; she complains of COPD but her pulmonary function test was normal, she has not required hospitalization or ER visits due to respiratory problems, and has continued smoking despite repeated advice to quit; she claims debilitating migraine headaches but did not present medical evidence of treatment for such, and has not seen a neurologist for evaluation/treatment nor sought ER treatment; she complains of unremitting pain in her back, neck, shoulders and right arm, but MRIs of her spine showed only mild lumbar disc

---

[6]The mental listings require marked restriction in at least two of the numbered criteria or a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and one of the following symptoms: repeated episodes of decompensation, residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or a current history of 1or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. Part 404, subpart P, appendix 1, Part A2, § 12.00, *et seq*.

degeneration and mild thoracic spondylosis; and while she has cervical disc disease and spondylosis, EMG/nerve conduction testing showed no evidence of cervical radiculopathy; while Dr. Moriarity did not recommend surgery, he did recommend physical therapy [9, p. 376][7] but Councell presented no evidence that she participated in physical therapy, she did not see Dr. Moriarity again for over two years, and has required no ER visits or hospitalizations for musculoskeletal complaints since July 2013.  Her treatment has consisted of medications prescribed by her primary care physician whose records note normal physical examination findings, including normal movement of all extremities and normal gait, and Rheumatologist Dr. Ivory made similar findings in June and July 2015.  [9, pp. 425-426, 466, 473, 480, 491,498-99] The ALJ also noted Councell is able to perform most of her daily activities – exercising, loading/unloading the dishwasher, loading/unloading the washer and dryer, and folding clothes, light housework, taking care of her personal needs, microwaving food and cooking with her boyfriend, driving, shopping weekly, handling her own finances, caring for her cat, reading and watching TV with her boyfriend.

   Based upon the whole evidence, the ALJ found at Step Four, that Councell could no longer perform her past work as a nurse, and limited her residual functional capacity (RFC) to performing sedentary, unskilled work with some additional limitations, as set out in the hypothetical questions directed to the VE.  At Step Five, the VE considered Councell's age, education, work history and residual functional capacity, and testified Councell could perform the job requirements of an unskilled surveillance systems monitor.  Councell challenges the ALJ's finding based on the VE's testimony because this job, as stated in the DOT, requires a reasoning level of 3, which requires one to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving

---

[7]Dr. Ivory also recommended physical therapy in June and July 2015. [9, pp. 491, 499]

several concrete variables in or from standardized situations. Councell contends her RFC, as found by the ALJ, limiting her to simple, routine, repetitive tasks, not at a production rate pace and simple work-related decisions conflicts with any job classified beyond reasoning level 1.

The majority of courts which have addressed such an issue have not found a conflict between level 3 reasoning and a restriction to simple work. *See*, *e.g.*, *Abel v. Astrue*, No. 3:09cv327-TSL-FKB, 2011 WL 1099890, at *7 (S.D. Miss. Mar. 2, 2011), Report and Recommendation adopted, 2011 WL 1044155 (S.D. Miss. Mar. 22, 2011) (finding no "obvious, direct conflict" between ability to perform only simple, repetitive tasks and level 3 reasoning); *Pierce v. Colvin*, No. 3:14cv971-FKB, 2016 WL 5415827, at *7 (S.D. Miss. Sept. 28, 2016) (finding jobs with level 3 reasoning consistent with RFC limited to simple work); *Ealy v. Colvin*, No. 3:13cv409-TSL-JCG, 2014 WL 3928193, at *3 (S.D. Miss. Aug. 12, 2014) (finding weight of authority supports determination that limitation to simple, repetitive, routine tasks could support work with a reasoning level of two or three); *Gheen v. Colvin*, No. 3:12-cv-806-CWR-FKB, 2014 WL 12540509 at *5 (S.D. Miss. Feb. 18, 2014), Report and Recommendation adopted 2014 WL 12540543 (S.D. Miss. Mar. 21, 2014); *Ruffin v. Colvin*, No. 3:16cv18-DPJ-FKB, 2017 WL 536549, at *5 (S.D. Miss. Feb. 8, 2017); *Reid v. Astrue*, No. 3:10cv327-WHB-LRA, 2011 WL 4101302, at *11 (S.D. Miss. Aug. 15, 2011), report and recommendation adopted, 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Auger v. Astrue*, 792 F. Supp. 2d 92, 97 (D. Mass. 2011); *Hurtado v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 793, 795 (11th Cir. 2011) (finding "no apparent conflict" between reasoning level 2 and 3 jobs and RFC limited to simple, routine tasks); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between job requiring level 3 reasoning and RFC limited to simple work); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

Councell did not raise this issue before the ALJ, and fails to explain why a restriction to simple, routine repetitive work conflicts with her ability to apply common sense in a sedentary, unskilled job; and Function Reports completed by Councell on November 4, 2013 and by her boyfriend on January 30, 2014, indicated her conditions did *not* affect her understanding. [9, pp. 213, 235]. At the hearing, Councell's attorney speculated the surveillance system monitor job may no longer be an SVP 2 position since the DOT entry for the position had not been updated since 1983. VE Schmidt testified that the job identified for Councell is an unskilled position which Schmidt has actually observed, and it is "just like watching a monitor, maybe adjusting monitors, calling in to someone of a higher skill level if there were incident ..." [9, p. 60] The Fifth Circuit has recognized that, "The value of a vocational expert is that [she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

Presupposing the existence of an unresolved conflict between the VE's testimony and the DOT, Councell submits that no substantial evidence supports the ALJ's decision. Because the undersigned finds no obvious, direct conflict between the ALJ's finding as to Councell's RFC and the DOT, this argument is without merit. The Fifth Circuit has rejected the argument that a VE's testimony must be identical to the DOT job description. *Carey v. Apfel*, 230 F.3d 131, 146-147 (5th Cir. 2000). The DOT is not comprehensive; it provides "necessarily general" job descriptions. *Fields v. Brown*, 805 F.2d 1168, 1171 (5th Cir. 1986).

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE... may be able to provide more specific information about jobs or occupations than the DOT.

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, *3. The VE provided such information. The undersigned finds no error in the ALJ's relying on the VE's testimony about requirements of

the surveillance system monitor job she found Councell could do, and the VE's testimony provides substantial evidence to support the ALJ's decision.  Councell had the burden to show error in the Commissioner's decision and prejudice resulting from said error.  *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).  The undersigned finds she has shown neither.

## RECOMMENDATION

The undersigned finds upon consideration of the entire record of proceedings below and controlling law, that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards.  The undersigned therefore recommends that Councell's motion be denied, the Commissioner's motion be granted, and the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

A party has 14 days after service of a copy of this Report and Recommendation to serve and file with the Clerk any written objections to it.  *L.U.Civ.R.* 72(a)(3).  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  Responses to objections must be filed within seven days after service, or the opposing party must notify the District Judge that he does not intend to respond to the objection.  A party who fails to timely file written objections to the Report and Recommendation is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 30th day of October, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE